Sullivan
No. 99-693

LOWER VILLAGE HYDROELECTRIC ASSOCIATES, L.P.

v.

CITY OF CLAREMONT

October 9, 2001

*Ransmeier & Spellman*, of Concord (*Timothy E. Britain* and *R. Matthew Cairns* on the brief, and *Mr. Cairns* orally), for the plaintiff.

*Hughes, Smith & Yazinski, LLP*, of Claremont (*John J. Yazinski* on the brief and orally), for the defendant.

DUGGAN, J. The defendant, City of Claremont (city), appeals an order of the Superior Court (*Morrill*, J.) finding a legally enforceable payment in lieu of taxes (PILOT) agreement between the city and the plaintiff, Lower Village Hydroelectric Associates, L.P. (LVHA), and concluding that Laws 1997, chapter 274, to the extent that it voids the PILOT agreement, violates Part I, Article 23 of the New Hampshire Constitution, and Article I, Section 10 of the United States Constitution. We affirm.

I

The following facts are undisputed. In 1981, the General Court enacted RSA 362-A:6 (1995) to encourage the propagation of local small power production and cogeneration facilities by allowing qualifying businesses to negotiate PILOT agreements with the cities and towns in which they are located. On June 20, 1997, RSA 362-A:6 was retroactively repealed effective March 1, 1997, and RSA 72:8 was amended to tax all small power producing facilities *ad valorem. See* Laws 1997, ch. 274.

LVHA is the owner of a hydroelectric generating facility located in Claremont. In June 1996, the city expressed an interest in entering into a PILOT agreement with LVHA. Thereafter, negotiations continued by letter. On April 2, 1997, the city assessor sent LVHA a letter stating:

> [T]he City is willing to accept [LVHA's March 13, 1997] PILOT offer of 2.5% of gross revenues from 1997 through 2004 and 5% of gross revenues from 2005 through 2011. Once the agreements are drawn up, [the city] will send you two originals for your signature.

That same day, the city assessor sent the city attorney a letter directing him to draw up a PILOT agreement between the city and LVHA. A copy of a PILOT agreement previously employed by the city was attached to the letter as a sample for the city attorney. The suggested PILOT form contained no material terms other than the structure of the payments in lieu of taxes. The final PILOT agreement was never drawn up.

During the 1997 legislative session, House Bill 566 (HB 566), which would repeal the authority of municipalities to enter into PILOT agreements under RSA 362-A:6, was introduced in the house with an effective date of April 1, 1997. Subsequently, the bill was considered in the senate where, after LVHA's president testified as to the existence of the alleged April 2, 1997 agreement, HB 566's effective date was amended to May 1, 1997. However, Senator Whipple, who was also the mayor of Claremont, later successfully lobbied to amend HB 566's effective date to March 1, 1997. HB 566 was thereafter enacted as Laws 1997, chapter 274.

After the enactment of Laws 1997, chapter 274, the city assessor, not considering the city bound by the April 2, 1997 letter, appraised the LVHA facility and assessed it $46,338.24 in *ad valorem* taxes. LVHA instead paid the city $6,570.61, representing the amount due according to the terms of the alleged PILOT agreement. LVHA then applied for an abatement of the taxes assessed against it for the 1997 tax year. The city denied the request. LVHA brought suit to enforce the PILOT agreement.

On motions for summary judgment, the superior court found that, although a contract did exist between the parties, Laws 1997, chapter 274 did not violate Part I, Article 23 of the New Hampshire Constitution. Upon reconsideration, the court reversed its previous order in part, concluding that Laws 1997, chapter 274, to the extent that it voids the PILOT agreement, violated both the New Hampshire and United States Constitutions. This appeal followed.

## II

"In reviewing a grant of summary judgment, we look at the affidavits and other evidence, and all inferences properly drawn therefrom, in the light most favorable to the non-moving party." *Forbes Farm P'ship v. Farm Family Mut. Ins. Co.*, 146 N.H. 200, 201 (2001). We will affirm the trial court if there was no genuine issue of material fact and the moving party was entitled to judgment as a matter of law. *See id.* "As no material fact is in dispute on appeal, we need only determine whether the moving party was entitled to judgment as a matter of law." *Id.* We review the trial court's application of the law to the facts *de novo. See Del Norte, Inc. v. Provencher*, 142 N.H. 535, 537 (1997).

The city first argues that its letter of April 2, 1997, was a preliminary negotiation, in anticipation of a more formalized agreement; therefore, it was insufficient to create a binding contract. We disagree.

A written memorandum is sufficient to establish a contract if it demonstrates that the parties have manifested their intent to be bound to the essential terms of a more detailed forthcoming agreement. *Estate of Younge v. Huysmans*, 127 N.H. 461, 466 (1985). In *Younge*, a buyer of land submitted a written purchase and sale agreement to the seller along with a check for $10,000. The buyer's initial offer of $160,000 was increased on several occasions without the submission of subsequent purchase and sale agreements. Although the $10,000 check was never cashed, the seller sent the buyer a note that stated, in its entirety:

> This is a short note to confirm that we have accepted your offer of $172,000.00 for the Younge property on Governor's Island in

Gilford, New Hampshire. We are in the process of drawing up a Purchase and Sale Agreement, which we will forward to you shortly.

*Id.* at 463. The seller then took the property off the market. In finding that the seller's note constituted acceptance of the buyer's offer, we held that, even though the seller explicitly stated that a purchase and sale agreement would follow, the evidence supported a finding that there was a binding contract.

Similarly, in the present matter, even though the city's letter explicitly stated that an agreement would be drawn up, the evidence supports a finding that a contract was formed. Neither the existence of LVHA's offer letter of March 13, 1997, nor the city's acceptance letter of April 2, 1997, is in dispute. Nor does the city dispute the essential terms contained in the April 2, 1997 letter. The city's only contention is that the parties anticipated a more formalized memorial of a "tentative" agreement.

In light of our holding in *Younge*, whether the parties contemplated further negotiations of minor details of the PILOT agreement is immaterial. The April 2, 1997 letter explicitly states that the city is willing to accept LVHA's offer. Moreover, the letter lays out the structure of LVHA's payments to the city as a certain percentage of gross revenues per year over certain periods of time. Details such as which day of the month and to what address the payments are to be made are not essential to contract formation. Taken together, these facts provide adequate evidence that the city manifested its intent to be bound to the material terms of the PILOT agreement. Therefore, we agree with the superior court that a contract existed as a matter of law.

### III

The city next argues that even if a contract exists, Laws 1997, chapter 274 does not offend Part I, Article 23 of the State Constitution or Article I, Section 10 of the United States Constitution. We analyze the constitutional claim first under the New Hampshire Constitution, relying upon cases interpreting the Federal Constitution only to aid in our analysis. *Cf. State v. Costello*, 138 N.H. 587, 589 (1994) (applying State Constitution, as protection afforded against *ex post facto* penal laws is the same under New Hampshire Constitution Part I, Article 23, and U.S. Constitution Article I, Section 10). Because we hold that application of Laws 1997, chapter 274 violates Part 1, Article 23 of the State Constitution, we need not engage in a separate federal analysis.

◼ Part I, Article 23 provides, in pertinent part: "Retrospective laws are highly injurious, oppressive and unjust. No such laws, therefore, should be made . . . for the decision of civil causes . . . ." In interpreting the reach of this provision, we have long held that "'every statute, which takes away or impairs vested rights, acquired under existing laws'" must be deemed a retrospective law within the meaning of Part I, Article 23. *Opinion of the Justices (Furlough)*, 135 N.H. 625, 630 (1992) (quoting *Woart v. Winnick*, 3 N.H. 473, 479 (1826)).

## A

We begin our analysis by considering whether Laws 1997, chapter 274 operated as a substantial impairment of a contractual relationship. *See Opinion of the Justices (Furlough)*, 135 N.H. at 630-31; *see also General Motors Corp. v. Romein*, 503 U.S. 181 (1992). "This inquiry has three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." *Opinion of the Justices (Furlough)*, 135 N.H. at 631 (quotation omitted).

◼ The city and LVHA entered into a contractual relationship on April 2, 1997, pursuant to RSA 362-A:6. This statute allowed the city to set an alternative to LVHA's tax obligations based on annual gross revenues. For the 1997 tax year, LVHA's obligation stood at $6,570.61 under the PILOT agreement. By retroactively repealing RSA 362-A:6 for any PILOT agreements entered into after March 1, 1997, Laws 1997, chapter 274 nullified the PILOT agreement and subjected LVHA to $46,338.24 in *ad valorem* taxation. Thus, there can be no question that the contract between the city and LVHA was substantially impaired by that part of chapter 274 that retrospectively repealed RSA 362-A:6.

## B

Having satisfied this threshold inquiry, we next conduct a balancing test to determine whether the power exercised by the State's enactment of chapter 274 is reasonable and necessary to serve an important public purpose. *Id.* at 634.

As a preliminary matter, we note that the "municipal government is really but a branch of the state . . . a constituent element of one sovereignty, and its local legislation and administration are the legislation and administration of the state . . . ." *Wooster v. Plymouth*, 62 N.H. 193, 208-09 (1882) (citations omitted). Thus, in New Hampshire, cities and towns are political subdivisions of a single state, organized for the benefit, and serving at the pleasure, of the sovereign. *See id.* at 208; Annotation,

*Municipal Home Rule*, 105 A.L.R. 259 (1936) (a municipality is an arm of the State no matter how great or small its sphere of action).

We generally defer to the judgment of the legislature in determining whether a particular act is reasonable and necessary to serve an important public purpose, *see Opinion of the Justices (Furlough)*, 135 N.H. at 634-35, but when the State attempts to abrogate its own contractual responsibilities, "complete deference to a legislative assessment of reasonableness and necessity is not appropriate because the State's self-interest is at stake." *Id.* at 635 (quotation omitted). Application of stricter judicial review reflects the principle that those who lawfully contract amongst themselves must have reasonable assurances that their rights and obligations will not be disturbed.

Because this case implicates the General Court's sovereign power of taxation reserved under Part 2, Article 5 of the New Hampshire Constitution, the city argues that we should instead apply the analysis set forth in *Estate of Kennett v. State*, 115 N.H. 50 (1975). The city's reliance on *Kennett* is misplaced. In *Kennett*, we held that RSA 77-A:1, the New Hampshire Business Profits Tax, which was enacted April 22, 1970, to apply to gross business profits earned since January 1, 1970, did not violate Part I, Article 23 because those profits had not acquired a fully vested status as of April 22, 1970. In so doing, we noted that because it has the exclusive power to impose and levy taxes, "the legislature decides the wisdom and practicality of each tax to be imposed free from interference by the judiciary." *Id.* at 53. The present matter involves the legislature's power to authorize municipalities to enter into contracts with small power producers. Thus, unlike *Kennett*, this case involves the impairment of a contract. When a retrospective law impairs a contract, and is not merely a retroactive application of that law, we apply the analysis set forth in *Opinion of the Justices (Furlough)*, 135 N.H. at 630.

■ The city's only justification for the enactment of chapter 274 is the promotion of the public good through the raising of revenue. However, "[f]inancial necessity, though superficially compelling, has never been sufficient of itself to permit states to abrogate contracts." *Opinion of the Justices (Furlough)*, 135 N.H. at 635 (quotation omitted); *cf. Association of Surrogates v. State of New York*, 940 F.2d 766, 774 (2d Cir. 1991) (precluding States, under federal Contract Clause, from dishonoring their contractual obligations during financial crises when other policy alternatives exist). The legislature has policy alternatives for raising revenue other than the breaching of its contractual responsibilities.

Although these options may be less attractive, our constitution places a burden upon the legislature to pursue them. *See Opinion of the Justices (Furlough)*, 135 N.H. at 635.

Accordingly, we hold that Laws 1997, chapter 274, insofar as it abrogates the existing PILOT agreement between LVHA and the city, violates Part I, Article 23 of the New Hampshire Constitution.

*Affirmed.*

BROCK, C.J., and BRODERICK, NADEAU and DALIANIS, JJ., concurred.