Rockingham
No. 2007-744

HOGAN FAMILY ENTERPRISES, LTD.

v.

TOWN OF RYE

Submitted: May 22, 2008
Opinion Issued: July 2, 2008

454

*Gottesman & Hollis, PA,* of Nashua (*Anna Barbara Hantz* on the brief), for the petitioner.

*Michael L. Donovan,* of Concord, by brief, for the respondent.

DUGGAN, J. The petitioner, Hogan Family Enterprises, Ltd. (Hogan), appeals orders of the Superior Court (*Lewis,* J.) denying its motion to return the matter to the trial docket, and granting a motion of the respondent, Town of Rye (town), to enforce a settlement. We affirm.

The record reflects the following facts. Hogan owns property in Rye, abutting Fairhill Avenue, on which naturally occurring wetlands have existed since pre-colonial times. A drainage pipe discharges water from Fairhill Avenue onto the property, and a separate drainage system drains water from the property into the sea. Hogan filed suit against the town alleging, *inter alia,* that the Fairhill Avenue drainage system was no longer adequate resulting in damage to the property, and seeking both damages and an order requiring the town to remove, replace, and re-engineer the Fairhill Avenue drainage system.

During the trial, the parties, through counsel, negotiated a potential settlement, with counsel for the town maintaining notes of the terms agreed to by the parties. Upon reaching an apparent agreement, the parties met with the trial court in chambers, and counsel for the town read aloud the terms from his notes. The trial court advised the parties that they were not required to settle. After reviewing the terms with the parties, including at least one principal member of Hogan, and concluding that the parties understood and assented to the terms, the trial court signed an order, in the parties' presence, noting that the case had settled, and requiring the parties to file their settlement agreement within thirty days.

The next day, counsel for the town, at the request of Hogan's counsel, emailed his notes to her. Counsel for Hogan then drafted a written settlement agreement from the notes, which provided as follows:

> The undersigned acknowledge that on June 21, 2007 a Settlement Agreement was entered into between the parties . . . whereby the parties agree as follows:
>
> 1. The Town in good faith and forthwith will commence the engineering work necessary to remove the pipe from the subject property and direct drainage from the catch basins towards Ocean Boulevard at Wallis Sands State Beach and to seek the required NH DOT approval for such a system. [Hogan's engineer] shall be permitted to review and comment on Town's proposed plan for drainage.
>
> 2. Hogan[] will grant a conservation easement over the subject lot to a conservation organization acceptable to [it]. Language to be

negotiated by counsel. Hogan[] will retain the right to mow and cut vegetation and trees in order to maintain [its] view. Hogan[] will also retain the right to use the parcel for agriculture and recreation, limited to [Hogan] and its successors, heirs and assigns. Easement shall not give right of access to public and shall be for private use only.

3. The selectmen will not oppose the building of a clay tennis court on the subject lot, provided all ordinances are met and all applicable wetlands permits, if any, are obtained.

4. The parties will make a status report to the court in 12 months.

With the exception of the sentence allowing Hogan's engineer to review and comment upon the town's proposed drainage plan, the terms of the agreement were consistent with the notes of the town's counsel. Counsel for the town, with the assent of counsel for Hogan, added language clarifying that the town would not be responsible to pay for Hogan's engineering review, and the town then executed the agreement.

Hogan, however, refused to execute the agreement, hired new counsel, and moved to restore the matter to the trial docket. The town objected and moved to enforce the settlement. After a hearing, at which Hogan, despite its allegation of undue pressure from its prior counsel to accept the settlement, refused to produce its prior counsel based upon attorney-client privilege grounds, the trial court granted the town's motion. This appeal followed.

On appeal, Hogan argues the trial court erred by concluding that the settlement: (1) is not barred by the applicable statute of frauds, RSA 506:1 (1997); (2) is enforceable; and (3) should not be set aside upon grounds of surprise, mistake or duress.

■ ■ "We review the trial court's ruling that a settlement existed as a mixed question of law and fact." *Poland v. Twomey*, 156 N.H. 412, 414 (2007). "We will not overturn the trial court's ruling on a mixed question unless it is clearly erroneous. If, however, the court misapplies the law to its factual findings, we review the matter independently under a plain error standard." *Id.* (citation omitted). A valid and enforceable settlement, like any contract, requires offer, acceptance, consideration and mutual assent. *Id.* Mutual assent requires that the parties have the same understanding of the agreement's essential terms, and manifest an intent to be bound by them. *Id.* In reviewing a settlement agreement, we are mindful of the strong public policy favoring the settlement of civil matters. *See id.* at 416; *Waters v. Hedberg*, 126 N.H. 546, 552 (1985).

■ A settlement requiring a party to transfer an interest in land is, generally, subject to the statute of frauds. *Byblos Corp. v. Salem Farm Realty Trust*, 141 N.H. 726, 731 (1997). We have long excepted, however, settlements "finalized under court supervision." *Id.*; *see also Perley v. Bailey*, 89 N.H. 359, 360 (1938). Hogan argues that the settlement here is subject to the statute of frauds because it requires Hogan to convey a conservation easement. The town counters that the settlement is excepted from the statute because it was finalized under court supervision. We agree with the town.

■ Hogan contends that the trial court's supervision was insufficient because the chambers conference was not recorded, and the agreement was not drafted prior to the conclusion of the conference. While we observed in *Perley* that "[t]he entry of a decree or judgment upon a parol stipulation made by the parties or their counsel in open court has long been usually a matter of course," the enforceability of the settlement in *Perley* derived not "from any virtue in the stipulation itself," but "from the control of the court." *Perley*, 89 N.H. at 360. "Indeed, courts generally look with favor upon agreements made in a judicial proceeding by the parties or their attorneys, and such stipulations should be encouraged" irrespective of whether they are made in open court or on the record. *State v. Blomquist*, 153 N.H. 216, 219 (2006); *cf. Settle v. Settle*, 121 N.H. 397, 398 (1981).

■■ We note that the better practice for trial judges presiding over settlement conferences may be to place the essential terms of the agreement on the record, or to otherwise reduce the terms to a contemporaneous memorandum of understanding. This may particularly be appropriate where, as here, the agreement contemplates future remedial actions by the parties. It is, nevertheless, the obligation of the parties and their counsel, and not the trial court, to ensure that a proper record is preserved. *Cf. State v. Staples*, 121 N.H. 959, 964 (1981). In this case, there is no indication that Hogan requested that the chambers conference be recorded. Moreover, Hogan was represented by counsel in the negotiations, the terms of the parties' agreement were contemporaneously memorialized by counsel for the town, and the trial court specifically reviewed each of the terms with Hogan and determined that Hogan understood and agreed to such terms. Upon this record, the trial court did not err by finding that the agreement had been sufficiently under its control so as not to be subject to the statute of frauds.

■■ Nor did the trial court err by finding that the parties entered into an enforceable settlement. The record reflects the essential terms of the settlement and the parties' assent to such terms, including specific limita-

tions on the extent of the contemplated conservation easement. *See Poland,* 156 N.H. at 415. Although the agreement provided that the "[l]anguage [of the easement was] to be negotiated by counsel," the existence of this term did not render the obligation to convey the easement so indefinite as to reflect a lack of assent, but merely imposed an obligation upon the parties to exercise good faith in the later negotiation of specific easement language. *See Albee v. Wolfeboro Railroad Co.,* 126 N.H. 176, 180 (1985). Nor do the additional minor terms regarding future engineering review render the agreement unenforceable. *See Lower Village Hydroelectric Assocs. v. City of Claremont,* 147 N.H. 73, 76 (2001) (contract may exist even if parties "contemplated further negotiations of minor details").

 Finally, we reject Hogan's contention that the settlement should be set aside upon the grounds of surprise, mistake or duress. Whether to set aside a settlement upon such grounds rests within the sound discretion of the trial court. *Perley,* 89 N.H. at 361. In this case, the trial court noted that the conservation easement and its limitations were specifically discussed in chambers, and that Hogan appeared to understand the nature of the agreement. The trial court further found that, in its view, there was no indication of fraud or that Hogan was under duress. Upon this record, we cannot conclude that contrary findings of fact were compelled.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, GALWAY and HICKS, JJ., concurred.