# THE STATE OF NEW HAMPSHIRE

## SUPREME COURT

**In Case No. 2022-0525, <u>Appeal of David Strauss & a.</u>, the court on February 22, 2024, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order.  <u>See</u> <u>Sup. Ct. R.</u> 20(2).  The petitioners, David Strauss and Judith Strauss (taxpayers), appeal a decision by the Board of Tax and Land Appeals (BTLA) that the Town of Effingham Select Board (Board) was without authority to grant an abatement on their property in Effingham.  We reverse.

I

The following facts are supported by the record or are undisputed.  The Town of Effingham (Town) contracts with Avitar Associates of New England, Inc. (Avitar) to assess real property in the Town.  In 2015, in assessing the value of the taxpayers' property, Avitar designated the property's view as "panoramic" and "extreme distant." (Capitalization omitted.)  The taxpayers filed an abatement application under RSA 76:16, I(b) with the Board, challenging the designation of their view as "overstating what is actually there based on the definition given in [Avitar's] [assessing] manual."  Avitar agreed that a change in the view designations from "panoramic" to "wide" and "extreme" to "distant" was warranted and recommended granting an abatement on the value difference of $26,300.  (Quotations and capitalization omitted.)  The Board accepted Avitar's recommendation and granted the abatement.

In 2020, after conducting a town-wide revaluation, Avitar again designated the taxpayers' property's view as "panoramic" and "extreme distant."  The taxpayers again filed an abatement application under RSA 76:16, I(b), challenging the designations of their view.  In February 2021, Avitar recommended that the Board deny the abatement request because "[r]egardless of the engineering measurement, the property, if not panoramic, is closer to panoramic than wide, and if not extreme distant, is closer to extreme distant than distant."  The Board accepted Avitar's recommendation and denied the abatement.

The taxpayers appealed to the BTLA pursuant to RSA 76:16-a, asserting that, based on the view distance codes and the view width codes used by Avitar, the view assessment should be abated by $42,000.  At a hearing on March 22, 2022, attended by the taxpayers and, on behalf of the Town, an

assessor from Avitar, Avitar moved to dismiss on grounds that the taxpayers failed to meet their burden of proof because they provided no evidence of the property's market value. The BTLA granted the motion, finding that the taxpayers "did not present any credible evidence of the Property's market value" and therefore failed to meet their "burden of proving by a preponderance of the evidence that they are paying more than their proportional share of taxes."

The taxpayers timely moved for rehearing. In their motion, the taxpayers asserted that the ground for their appeal from the 2020 assessment was a physical description error that resulted in the contributory value of the property's view being disproportionately assessed. They argued that, because their appeal was based upon a physical description error, not a valuation opinion difference, evidence of fair market value was not required because their "burden of proof of establishing disproportionality . . . was met by proving that the Town made a measurement error, i.e. a physical description error, upon which its assessment was made." The BTLA issued an order suspending its March 30 order pending a decision on the taxpayers' motion. See RSA 541:5 (2021).

While their motion for reconsideration was pending with the BTLA, David Strauss attended the Board's April 12, 2022 public meeting. The Board had before it the BTLA's March 30 order. Strauss explained to the Board that the BTLA had dismissed the taxpayers' appeal for failure to present evidence of market value without addressing whether a physical description error had occurred. He further explained that the property's view had not changed since 2015 when the Board had accepted an abatement recommendation from Avitar based on a correction of the view measurements from panoramic to wide and from extreme distant to distant. After noting that the taxpayers' motion for rehearing was pending before the BTLA, members of the Board agreed that the taxpayers had "a legitimate argument" that Avitar's rationale that the measurement was "close enough" was not sufficient. (Quotation omitted.) Accordingly, based on good cause shown under RSA 76:16, I(a), the Board Chair moved "to direct the Assessor's Office to adjust the overall assessment of the property . . . , from the year 2020 to present, by adjusting the view factors of Panoramic to Wide and Extreme Distance to Distant," thereby resulting in "an overall reduction of assessed value of $42,000." The motion passed unanimously.

Shortly after the Board's April 12 meeting, the Town Administrator informed the taxpayers that she had spoken with the BTLA and was told the Board "cannot override the BTLA, only the Supreme Court has that authority," and that she would be providing the BTLA with a copy of the minutes from the April 12 meeting. On April 15, the taxpayers notified the BTLA that they had reached an "informal settlement" with the Board at its April 12 meeting and moved that the BTLA "either approve the same as [an] informal settlement, or

2

dismiss the . . . matter in its entirety as being moot." That same day, the BTLA denied the taxpayers' motion for rehearing, and, by letter dated April 19, returned the taxpayers' "Motion to Allow Informal Settlement," explaining that it could not "be accepted as filed" because "the record is closed in this matter pursuant to Tax 201.27(j)." See N.H. Admin. R., Tax 201.27(j) ("The record shall be closed at the conclusion of the hearing unless the board leaves the record open to receive additional evidence or documents requested by the board at the hearing.").

On May 16, 2022, the BTLA received documents from an anonymous source suggesting that at the Board's April 12 meeting Strauss had asked the Board "to overrule the BTLA decision and change the value on his property." In response, the BTLA issued an "Order to Show Cause," opened a docket "pursuant to RSA 71-B:16, II," and ordered each member of the Board, Town counsel, and representatives of Avitar to attend a hearing to "explain why and under what authority [the Board] granted the Taxpayers an abatement for tax year 2020" after the BTLA had issued its March 30 decision dismissing the taxpayers' appeal. (Capitalization, underlining, and bolding omitted.) See RSA 71-B:16, II (2012) (providing that the BTLA "may order a reassessment of taxes previously assessed . . . [w]hen it comes to the attention of the board from any source, . . . that a particular parcel of real estate . . . has been fraudulently, improperly, unequally, or illegally assessed"). Following the hearing, the BTLA issued a written decision finding that "the Town was without authority to grant the abatement and therefore it should not be processed." The BTLA subsequently denied the taxpayers' motion for rehearing. This appeal followed.

II

At the outset, we reject the BTLA's assertion that the taxpayers lack standing. In evaluating whether a party has standing to sue, we focus on whether the party suffered a legal injury against which the law was designed to protect. Teeboom v. City of Nashua, 172 N.H. 301, 307 (2019). The party must show that its own rights have been or will be directly affected. Id. Here, the effect of the BTLA's decision following the show cause hearing was to overturn the Board's decision to settle its dispute with the taxpayers by granting an abatement on their property. Thus, the taxpayers' own rights were directly affected sufficient to establish standing. See id.

The taxpayers argue that the BTLA erred as a matter of law in conducting an inquiry under RSA 71-B:16, II because "what actually occurred at the . . . [Board] meeting on April 12, 2022, was not a vote to overrule the BTLA, but to grant an abatement of the 2020 taxes for good cause pursuant to" RSA 76:16, I(a). (Capitalization, underlining, and bolding omitted.) They assert that "[a]fter [receiving] notice of the informal settlement" with the Board, "the BTLA could have conducted . . . a proper hearing pursuant to [New Hampshire Administrative Rule] Tax 201.23(c) as to whether or not the

abatement/settlement would result in disproportionate, illegal, or fraudulent assessment of taxation." Because the BTLA did not do so, they argue, the settlement with the Board became final and accordingly there was no need for the inquiry under RSA 71-B:16, II.

The BTLA counters that its decision was lawful and reasonable because "the Taxpayers' abatement request under RSA 76:16, I(a) was based on the identical reasons for which the BTLA already had found no good cause under RSA 76:16, I(b)." The BTLA also asserts that "[n]othing in the record supports the Taxpayers' claim that the Town entered into a settlement agreement with the Taxpayers" because the taxpayers "do not point to any written settlement agreement consistent with the requirements of" New Hampshire Administrative Rule Tax 201.23(b).

The standard for reviewing the BTLA's decision is established by statute. See RSA 541:13 (2021); RSA 71-B:12 (2012). We will not set aside or vacate a BTLA decision except for errors of law, unless we are satisfied by a preponderance of the evidence that such order is unjust or unreasonable. Appeal of City of Berlin, 174 N.H. 733, 738 (2022). The appealing party has the burden of demonstrating that the BTLA's decision was clearly unlawful or unreasonable. Id. at 738-39. The BTLA's findings of fact are deemed prima facie lawful and reasonable. Id. at 739.

Pursuant to RSA 76:16, I(a), "[s]electmen . . . , for good cause shown, may abate any tax, including prior years' taxes, assessed by them or their predecessors, including any portion of interest accrued on such tax." RSA 76:16, I(a) (Supp. 2023); see RSA 41:8 (2012) ("The selectmen shall manage the prudential affairs of the town and perform the duties by law prescribed."). Here, pursuant to that authority, the Board determined at its meeting on April 12, 2022 that — given the taxpayers' evidence that the assessment was based upon a physical description error — the taxpayers presented good cause for abating their property taxes. See Carr v. Town of New London, 170 N.H. 10, 15 (2017) (explaining that "if justice requires an abatement, that would be good cause for the selectmen to abate the property tax" (quotation and brackets omitted)). In doing so, the Board effectively settled the matter that was pending before the BTLA, in accordance with New Hampshire's "longstanding policy of promoting settlement." G2003B, LLC v. Town of Weare, 153 N.H. 725, 728 (2006); see Hogan Family Enters. v. Town of Rye, 157 N.H. 453, 456 (2008) (explaining that public policy strongly favors the settlement of civil matters); RSA 541-A:31, V(a) (2021) (under the Administrative Procedure Act, "informal disposition may be made of any contested case, at any time prior to the entry of a final decision or order, by stipulation, agreed settlement, consent order or default"). As counsel for the BTLA conceded at oral argument before this court, the Board had authority to resolve the case.

4

Nonetheless, the BTLA argues that the record does not support a conclusion that the Board and the taxpayers entered into a settlement agreement because the requirements for settlement agreements set forth in Tax 201.23(b) were not satisfied. The BTLA, however, declined to review the settlement agreement upon receiving it in April 2022 because it deemed the record to be closed. Had the BTLA timely done so, it could have determined whether the agreement satisfied the criteria set forth in the rule. See N.H. Admin. R., Tax 201.23(b); see also N.H. Admin R., Tax 201.23(e). In addition, the BTLA could have determined whether the settlement resulted in "disproportionate, illegal, or fraudulent assessment or taxation." N.H. Admin. R., Tax 201.23(c).

Accordingly, we reverse the BTLA's determination that the Board acted without authority when, on July 12, 2022, it granted an abatement on the taxpayers' property.

Reversed.

MACDONALD, C.J., and BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred; HICKS, J., sat for oral argument but did not participate in the final vote, see N.H. CONST. pt. II, art. 78.

**Timothy A. Gudas,
Clerk**