COBB, Judge.
We have for review a circuit court judgment upholding the denial by the Lake County Property Appraiser (Havill) of an ad valo-rem propérty tax exemption as of January 1; 1995 for a 29-acre parcel of real property owned by the plaintiff below,-Southlake Community Foundation, Inc. (hereinafter Foundation).[1] The subject property, referred to as “Aurora,” is the first phase of development of a larger property consisting of 617 acres, known as “Southlake.”
Robert L. Chapman, ÍI and Elisabeth Chapman, husband and wife, have owned the vacant Southlake property, located in the southern part of the county near Disney World and Sea World in adjoining Orange County, for a number of years. In 1990, they proposed to develop it as a residential project consisting of some 8000 units and ten neighborhoods with an estimated value when completed of between $300,000,000 and $400,-000,000. It was contemplated that the property would generate a profit for the Chapman family.
The size of the proposed project was such that it constituted a “Development of Region *362 al Impact” under section 380.06, Florida Statutes; therefore, it required approval by the Central Florida. Regional Planning Council and other agencies because of the state’s concern with wetland preservation, archeological sites, wildlife habitat, storm water discharge, open space, recreation areas, energy conservation, contribution to off-site im: pact of the project, quality of life, transportation, care for the elderly, urban renewal or redevelopment, mass transit, onsite child care, and provisions for “affordable housing.” The latter term refers to housing which costs no more than thirty percent (30%) of a family’s median adjusted gross annual income.
In order to provide the required affordable housing, the Chapmans formed a nonprofit corporation, Foundation, of which Robert L. Chapman, II was president. The first board of directors of that corporation were all members of the Chapman family by blood or marriage. The Chapmans and Foundation then filed their application for a Development Order with the State of Florida, Department of Community Affairs (hereinafter the Department) in 1990.
The Department entered a development order in 1991 requiring Foundation to provide a certain amount of affordable housing through the following means:
5. ...The Southlake Community Development [sic] Foundation, Inc., is to provide 940 rental units, of which 20% or 188 were to be set aside for families earning at or below 50% of median income for the Orlando Metropolitan Statistical Area (MSA). This figure is $41,900 as of January 1,1995. Including these units, at least 50% or 4,000 units 'in Southlake would be affordable to “Moderate Income” households earning at or less than 120% of median annual income, or $50,280. Of those 4,000 units, 40% or 1,600 were to be affordable to households making 80% -of median annual income or $33,520 (“Low Income”).
The Chapmans had the Aurora land appraised and sold it to Foundation in 1993 for approximately one-third (1/3) of its appraised value. Foundation then began development of Aurora. It scaled down the 940 units of “affordable housing” to 434 units. Occupancy of twenty percent (20%) of the units was restricted to “very low income” persons and an additional thirty percent (30%) of the units to “low income” persons as those terms are defined in section 420.0004(9), (14), Florida Statutes. There were no restrictions as to occupancy of the remaining fifty percent (50%) of the project. Foundation is not restricted as to the rents it can charge any of its tenants so long as the set-aside units’ rents do not exceed the thirty percent (30%) “affordable” limit.
At the trial below, Foundation’s position was supported by a memorandum dated July 2, 1992 which Havill initialed and gave to an appraiser who was appraising the property for Foundation’s lenders. The memo stated:
In light of the attached opinion provided to me by the Florida Department of Revenue which is based on their view of the information submitted, I have concluded that the Southlake Community Foundation will qualify for the ad valorem tax exemption for 1993 and subsequent years assuming the facts described remain the same.
At the time of the memo, Foundation did not own land in Lake County and was engaged in no charitable activities. Additionally, there was no pending application for a tax exemption for the year 1992: There was also in existence a letter from the property appraiser’s attorney indicating that the property would not qualify for an exemption.
Foundation challenged the denial of its exemption for Aurora for the year 1995. A final healing on that complaint took place in October, 1996, and in December the trial court rendered a final judgment in favor of Havill. The trial court arrived at the following conclusions:
(1) As of January 1, 1995 (based on 1994 information) Foundation was “nonprofit” and was designated as a 501(e)(3) organization by the IRS. Additionally, Foundation was “nonprofit” as that term is defined in section 196.195, Florida Statutes.
(2) All property owned by an exempt entity and used “predominantly for exempt purposes is to be exempted from ad valorem taxation to the extent of the ratio that such predominant use bears to the non-exempt *363 use. § 196.192(2), Fla. Stat. (Each use to which the property is being put must be considered in granting an exemption, including any economic use in addition to any physical use).
(3) As of January 1, 1995, the economic use (ie., to further construction of a $300,-000,000 project for profit) “far outweighed the physical uses of the property.”
Considering every use to which the Aurora property was being put, including economic as well as physical, the predominant use was to fulfill Southlake’s requirements of the FQD (Florida Quality Development) order to enable the Chapman family to develop their $300,000,000 project.
(4) The physical use of the Aurora project as of January 1, 1995, qualified as a charitable use (§ 196.012(7)). However, considering economic and physical uses, the predominant use was not for a charitable or exempt purpose.
(5) The only party able to raise a claim of equitable estoppel would be the mortgage lender and not the Foundation since the Foundation was not harmed (loans were made and Chapmans received benefit).
(6) Section 197.122, precludes any act on the part of a property appraiser from preventing payment of taxes and thus, regardless of any prior statement by Havill, he was required to act only on current applications and to consider the actual situation as of January 1st of each tax year. Additionally, even if a taxpayer is granted an exemption in a previous year this doesn’t bind the property appraiser to grant an exception on the property in subsequent years.
Foundation has appealed the foregoing judgment, and Havill has filed a cross-appeal challenging the trial court’s position that Foundation was “nonprofit” and the finding that the use of Aurora was “charitable.” Ha-vill contends that renting apartments to persons with a household income of $33,520 per year simply does not qualify as a charitable use of property.
Havill contends that the “practical dominion” exercised by the Chapmans and their development corporation, Southlake, Inc., over Aurora, with the attendant economic benefits to them, “overwhelm any use of the property by the corporation they established to hold title to the property.” Legal title to Aurora, says Havill, is secondary to the benefits flowing from that property. See Mikos v. King’s Gate Club, Inc., 426 So.2d 74 (Fla. 2d DCA 1983). Havill also relies on our opinion in Underhill v. Edwards, 400 So.2d 129 (Fla. 5th DCA), rev. denied, 411 So.2d 381 (Fla.1981) for the proposition that the predominant use of Aurora was economic, not charitable. We agree. The extent of the practical dominion over the Aurora property exercised by the Chapmans constituted the “equivalent of ownership.” Mikos at 76.
But even if we were to agree with the argument of Southlake that there was insufficient evidence offered below to justify Ha-vill’s “piercing of the corporate veil,” we would still affirm the judgment below based upon the cross-appeal. In respect to Havill’s cross-appeal, we note the findings in paragraphs 14 and 15 of the final judgment, findings which are supported by the record:
14. As of January 1, 1995, the Aurora •property was physically being used as a 434-unit rental apartment project. The property was not “predominantly” occupied by “very low income” persons, or persons entitled to government assisted housing under “Section 8” of the United States Housing Act of .1937, 42 USC § 1437(f). In fact, no persons entitled to “Section 8” assistance have ever applied to reside at Aurora. No indigent farm workers five there. 80% of the apartments are rented to persons who fall within the “Low Income” definition, i.e., making $33,520 per year. Mr. Cagan, property manager and the father of one of the persons to whom the Chapman II’s currently have South-lake under contract for sale, estimated that 75 to 80% of the persons living at Aurora are employed by the Disney World and Sea World and similar tourist attractions, which are from 9 to 14 miles distant from the property and are not located in Lake County.
15. Neither of Plaintiffs expert witnesses, Professor R.C. Stroh and Mr. Rob *364 ert Ansley, Jr., could testify as to .the existence of any Federal, State or .local programs that exist to directly spend money to provide rental housing for persons above the “very low income” level, i.e., persons who would directly qualify for Federal housing assistance under the Section 8 program, 42 USC § 1437(f). Mr. Havill knows of no such programs, nor does his attorney, B. Jordan Stuart, Esq. The “Section 8” rental payment program, which is only available to families making at or below 50% of .area median income, and the migrant farm worker, program (“Farm Labor Housing Loan Grants 514 Program”) administered by the FmHA, appear to be the only programs providing direct payment of public funds to provide rental housing.
This court made it clear in Public Housing Assistance, Inc. v. Havill, 571 So.2d 45 (Fla. 5th DCA 1990) that whether a property is entitled to an exemption turns on whether it is operated for a “charitable purpose” as defined in section 196.012(7), Florida Statutes (1989). We stated therein:
The statute provides that “charitable purpose” constitutes a function or service which is of such community service that its discontinuance could legally result in the allocation of public funds for the continuation of the function or service.
None of the expert witnesses at trial was able to describe a federal, state, county or local program to provide real housing to persons earning at the income level of $33,520 per year. The trial court astutely noted the Foundation property was not predominantly occupied by very low income persons or persons entitled to a section 8 subsidy, differentiating it from the project in Public Housing. Thus, while there is no legal requirement that public funds actually be allocated for-the rent or operation, the absence of such funds at Aurora is direct evidence that the discontinuance of the rental units would not, per se, result in the allocation of public funds' to provide similar housing.
The factual distinction between the Aurora project and the rental units in Public Housing is striking. While the provision of affordable housing to “low income” people generally constitutes a “charitable purpose,” here, the actions of Foundation simply do not fall within the definition of “charitable purpose” found in section 196.012(7). There would have to be some evidence that public funds would need to be allocated in the absence of the Foundation’s low income housing efforts. In short, even though the trial court found that the property was physically being us.ed for a charitable purpose on January 1, 1995, the evidence, does not support that finding.
We agree with the trial court in respect to the estoppel issue raised by Foundation. Accordingly, Havill’s denial of the charitable exemption is affirmed.
AFFIRMED.
GRIFFIN, C.J., and THOMPSON, J., concur.

. See § 196.012(7), Fla. Stat. (1993).