NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

| | | |
|---|---|---|
| AHF-BAY FUND, LLC, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | Case No. 2D14-408 |
| | ) | |
| CITY OF LARGO, FLORIDA, | ) | |
| a municipal corporation, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Opinion filed April 22, 2015.

Appeal from the Circuit Court for Pinellas
County; John A Schaefer, Judge.

Joseph H. Lang, Jr., and Christopher W.
Smart of Carlton Fields Jorden Burt, P.A.,
Tampa, for Appellant.

Elizabeth W. Neiberger of Bryant Miller
Olive P.A., Tallahassee, and Alan S.
Zimmet and Nicole C. Nate of Bryant
Miller Olive P.A., Tampa, for Appellee.


MORRIS, Judge.

AHF-Bay Fund, LLC (AHF), appeals a final judgment entered in favor of

the City of Largo on its claims for breach of contract and enforcement of a covenant at

law.  The underlying dispute involves a PILOT agreement entered into by AHF's

predecessor in interest, RHF Brittany Bay, LLC (RHF), and the City.  A PILOT

agreement is an agreement which requires an entity that is otherwise exempt from ad valorem taxation to make "payments in lieu of taxes" to a local government. AHF purchased the property that was the subject of the agreement but failed to make the payments as required. As a result, the City sued, and the trial court entered summary judgment on the two claims, followed by entry of final judgment in the City's favor.[1] AHF raises three arguments on appeal. AHF first argues that the PILOT agreement was not a covenant running with the land. We find no merit to that argument and do not address it further. However, because we agree with AHF's second argument that the PILOT agreement is contrary to Florida law, as well as Florida's public policy, we reverse. Because our resolution of the second issue is dispositive of the case, we express no opinion on the third issue raised by AHF relating to its liability under the final judgment.

## I.     BACKGROUND

In December 2000, RHF acquired the subject property. RHF was a tax exempt 501(c)(3) organization as defined by the Internal Revenue Code. See 26 U.S.C. § 501(c)(3) (2000). RHF planned to develop the property to provide affordable housing for persons with low to moderate income pursuant to chapter 420, Florida Statutes. As set forth in section 196.1978, Florida Statutes (2000), affordable housing projects owned by a 501(c)(3) organization are exempt from ad valorem taxation.

---

[1]In the complaint, the City also raised a claim of breach of contract as against AHF's predecessor in interest, as well as claims of quantum meruit and unjust enrichment as against AHF. The trial court did not enter a final judgment on the quantum meruit or unjust enrichment claims on the basis that they were pleaded in the alternative and were ultimately seeking the same relief as the other two claims against AHF. The breach of contract claim as against AHF's predecessor in interest is not a subject of this appeal.

To finance the project, RHF reached an agreement with the City wherein the City would arrange for the issuance of tax-exempt bonds[2] that carried a considerably lower interest rate than RHF could have obtained using traditional bank financing. In exchange for the issuance of the bonds, RHF entered into the PILOT agreement, thereby agreeing to make annual payments to the City "in an amount equal to the portion of ad valorem taxes to which the City would otherwise be entitled to receive for the [p]roperty as if the [p]roject were fully taxable in accordance with standard taxing procedures." The PILOT agreement provided that the amount of the payments would be determined by multiplying the property's assessed value by the millage rate established by the City each year. The PILOT agreement also provided that "the City has and will provide services to [RHF] as a result of [RHF's] status as a tax-exempt entity."

The PILOT agreement specified that it was binding on any subsequent owners of the subject property as long as certain conditions were met, though it made no mention of a covenant running with the land. The PILOT agreement was not recorded in the official public records. However, simultaneously with the execution of the PILOT agreement, the parties executed a memorandum of agreement that was recorded in the public records. The memorandum indicated that the PILOT agreement was available for inspection in the city clerk's office and that it imposed certain covenants running with the land.

RHF made the payments as required by the PILOT agreement for the years 2001 through 2005. AHF, also a nonprofit affordable housing provider, acquired

---

[2]The City entered into an interlocal agreement with the Capital Trust Agency to permit the Agency to issue tax-exempt bonds.

the property in November 2005. AHF has continued to own and operate the property as an affordable housing community since the purchase. However, when the City did not receive the annual payment that was due on December 31, 2006, it contacted AHF. AHF denied knowledge of either the PILOT agreement or the memorandum of agreement, asserting that neither had been shown to be an exception to coverage in its title insurance policy and that neither had been referenced in the special warranty deed by which AHF took title.

Based upon AHF's refusal to make payments under the PILOT agreement, the City filed suit in 2010. The City sought a summary judgment and the trial court granted the motion in part. Ultimately, the trial court entered a final judgment in favor of the City, awarding $695,158.23 in damages and prejudgment interest.

## II.     ANALYSIS

Where a trial court has granted summary judgment and there are no disputed factual issues, our review "focuses on whether the court correctly determined that the moving party was entitled to prevail as a matter of law." Damianakis v. Philip Morris USA Inc., 155 So. 3d 453, 461-62 (Fla. 2d DCA 2015) (citing Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000)). Pure issues of law are reviewed under a de novo standard. See Bosem v. Musa Holdings, Inc., 46 So. 3d 42, 44 (Fla. 2010).

Exemptions from taxation are granted by the Florida Legislature when they are deemed to be in the interest of the general welfare of the public. See Miami Battlecreek v. Lummus, 192 So. 211, 216 (Fla. 1939). Such exemptions are to be

strictly construed.  See id.  The exemption from ad valorem taxation as set forth in section 196.1978 is applicable here.

Section 196.1978 was the legislature's response to Southlake Community Foundation, Inc. v. Havill, 707 So. 2d 361 (Fla. 5th DCA 1998).  Prior to the Havill decision, nonprofit entities typically enjoyed exemption from ad valorem taxation without qualification.  But in Havill, the Fifth District Court of Appeal called into question that practice.  After Havill was decided, the Florida Legislature enacted section 196.1978, making it clear that all 501(c)(3) nonprofit entities that provide affordable housing for low to moderate income families were entitled to the exemption.  The legislative history of section 196.1978 is particularly instructive:

> A recent court ruling in Florida's Fifth District Court of Appeal[] (Southlake Community Foundation, Inc. v. Havill, (Fla. 5th DCA 1997)), held that non-profit housing organizations, qualified under 501(c)(3) of the Internal Revenue Code, cannot be considered "charitable" unless they provide affordable housing exclusively to persons who are Section 8 Housing and Urban Development voucher tenants.  The court failed to recognize other non-profit housing organizations, qualifying under 501(c)(3) of the Internal Revenue Code, that provide affordable housing to persons under other state affordable housing programs such as the State Apartment Incentive Loan Program (SAIL). Consequently, the ruling financially undermines non-profit properties which provide housing to low or very low income working families under programs provided for years by the Florida Housing Finance Corporation or local governments. The ruling effectively makes such properties subject to ad valorem taxation for which they are presently exempt.

Fla. H. Comm. on Water & Resource Management, HB 17 (1999) Staff Analysis (Apr. 8, 1999).

There is no dispute that AHF is a nonprofit 501(c)(3) organization or that it owns and operates the property as an affordable housing option for low to moderate

-5-

income families.  Consequently, AHF is entitled to exemption from ad valorem taxation pursuant to section 196.1978.  But the dispute here centers on whether the payments called for under the PILOT agreement are the equivalent of ad valorem taxes disguised under another name.  We conclude that they are.  The payments were to be made in amount equal to the amount of ad valorem taxes that would have been due but for AHF's tax exempt status.  The next question, then, is whether an agreement such as the one involved here violates the Florida Constitution.[3]

Because a municipality's taxing power is granted only by the Florida Constitution or Florida Legislature, see art. VII, § 9(a) Fla. Const. (providing generally that municipalities shall impose taxes as authorized by law); § 166.211(1), Fla. Stat. (2000) (limiting power to levy ad valorem taxes "in a manner not inconsistent with general law"),[4] and because section 196.1978 expressly prohibits ad valorem taxation on properties being used for affordable housing, a municipality cannot circumvent that prohibition by seeking to recover ad valorem taxes merely by utilizing a different name, see State v. City of Port Orange, 650 So. 2d 1, 3 (Fla. 1994) (applying that principle where City sought to impose a tax under the guise of a transportation utility fee).

This precise issue—involving PILOT agreements in place of ad valorem taxation—appears to be one of first impression in this state.  However, a Pennsylvania

---

[3]The City contends that this issue was not properly preserved below. However, we conclude that this issue was preserved through AHF's answer and affirmative defenses as well as AHF's motion for reconsideration of the order granting partial summary judgment.  See LoBello v. State Farm Fla. Ins. Co., 152 So. 3d 595, 600 (Fla. 2d DCA 2014) (noting that trial courts may reconsider and modify interlocutory orders—such as an order granting summary judgment—at any time prior to entry of a final judgment).

[4]See also State v. City of Port Orange, 650 So. 2d 1, 3 (Fla. 1994); City of Miami v. Kayfetz, 30 So. 2d 521, 524 (Fla. 1947).

court addressed a similar issue in School District of Monessen v. Farnham & Pfile Co., Inc., 878 A.2d 142 (Pa. Commw. Ct. 2005). That case involved a Pennsylvania Act declaring certain areas to be exempt from ad valorem taxation on a temporary basis. Farnham and Pfile's predecessor in interest had entered into a PILOT agreement with the local school district whereby it agreed to make payments in lieu of taxes "for municipal services and other services to be rendered for the property." Id. at 145. The annual payments were based upon the millage rates, much like the payments in this case. Id. When Farnham and Pfile purchased the property, it was informed the property was temporarily exempt from ad valorem taxes, and Farnham and Pfile agreed to abide by the terms of the PILOT agreement. Id. at 145-46. However, Farnham and Pfile refused to make the payments as called for in the agreement, and the school district, along with the City of Monessen, filed a complaint for declaratory judgment. Id. at 146. Summary judgment was granted in favor of the school district. Id.

On appeal, Farnham and Pfile argued that the PILOT agreement was unenforceable, illegal, and invalid because it imposed "the substantive equivalent of real property taxes" despite the fact that the property was exempt from such taxes. Id. at 150. The appellate court agreed, concluding that the payments violated the intent of the Act delineating the property exempt from ad valorem taxes. Id. In reaching that holding, the court noted that the payments were not correlated to any specific services and that they did not "reflect the fair cost of any particular service provided to the [p]roperty by the [s]chool [d]istrict." Id. at 151. Additionally, the court pointed to the school district's complaint, wherein it alleged that the payments were being made in lieu of taxes. Id. Thus the court concluded that "[b]ecause the PILOT[] [was] calculated and

billed like taxes and [was] not linked to the taxing authority's supply of needed services, . . . the PILOT[] [was] the equivalent of real property taxes, merely disguised as payments for municipal services."  Id. at 152.

Beyond the holding that the payments violated the Act, the court also concluded that Farnham and Pfile was not liable for the payments despite the fact that it had agreed to abide by the PILOT agreement.  Id.  The court noted that parties are generally free to contract as they wish, but relied on earlier case law for the proposition that a contract may be found unenforceable on grounds of public policy.  Id. at 152-53 (citing Cent. Dauphin Sch. Dist. v. Am. Cas. Co., 426 A.2d 94 (Pa. 1981)).

We acknowledge that the Pennsylvania court did not hold that all PILOT agreements are invalid.  See id. at 152 n.6.  Rather, the PILOT agreement was found invalid there because the Act specifically provided a temporary exemption from ad valorem taxation and the PILOT agreement in question was merely an attempt to recoup the ad valorem taxes that would have otherwise been due.  Id. at 152.

Similarly here, the property in question is exempt from ad valorem taxation pursuant to section 196.1978, but the PILOT agreement requires the owner of the property to make annual payments that are the equivalent of the ad valorem taxes that would have otherwise been due.  Additionally, much like the PILOT agreement in Farnham & Pfile Co., Inc., the agreement here does not specify any particular service that the City will provide to AHF that is not provided to other properties.  878 A.2d at 151.  There is no dispute that those services were enjoyed by other properties within the jurisdiction and that those services would have been provided in the absence of the PILOT agreement.  And in the City's complaint, it alleged that AHF "fail[ed] to tender the

-8-

Payments in Lieu of Taxes," and requested that the trial court enforce the PILOT agreement by either awarding the ad valorem taxes that would otherwise have been due or imposing an equitable lien on the property. The utilization of that language supports the argument that the City was attempting to recoup the ad valorem taxes under a different name. See Farnham & Pfile Co., Inc., 878 A.2d at 151-52 (citing school district's allegations in its complaint as indication that school district was seeking to recoup ad valorem taxes).

We conclude that based on the statutory exemption from ad valorem taxation as set forth in section 196.1978, the City did not have authority to collect ad valorem taxes from AHF via enforcement of the PILOT agreement. The PILOT agreement violates the public policy of promoting the provision of affordable housing for low to moderate income families and is therefore void. See Am. Cas. Co. v. Coastal Caisson Drill Co., 542 So. 2d 957, 958 (Fla. 1989) (noting that contracts that contravene an established interest of society can be found void as against public policy). Additionally, we hold that a PILOT agreement that requires a party to make payments that are the equivalent of ad valorem taxes that would otherwise be due but for a statutory tax exemption violates article VII, § 9(a) of the Florida Constitution, which permits municipalities to impose taxes only as authorized by law. Accordingly, the final judgment entered in favor of the City is hereby reversed.

Finally, we recognize that PILOT agreements similar to the one in this case abound in municipalities throughout Florida. Thus, the magnitude of our opinion holding that these types of agreements violate Florida law may pose a significant hardship on municipalities that rely on such payments to meet their budget

-9-

requirements.  We therefore certify to the Florida Supreme Court the following question

to be of great public importance:

> DO PILOT AGREEMENTS THAT REQUIRE PAYMENTS
> EQUALING THE AD VALOREM TAXES THAT WOULD
> OTHERWISE BE DUE BUT FOR A STATUTORY TAX
> EXEMPTION VIOLATE SECTION 196.1978, FLORIDA
> STATUTES (2000), AND ARTICLE VII, § 9(a) OF THE
> FLORIDA CONSTITUTION?

> Reversed and remanded.

SILBERMAN and BLACK, JJ., Concur.